**FILED**
**AUGUST 24, 2023**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MARY GREEN, a single person; and SHERRI GREEN, a single person, | ) ) ) | No. 39094-2-III |
| Appellants, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| BONNIE J. BRUNT and JOHN DOE BRUNT, husband and wife and the marital community composed thereof, | ) ) ) ) ) | |
| Respondents. | ) ) | |

PENNELL, J. — Mary and Sherri Green appeal a summary judgment order dismissing their claims against Bonnie Brunt, now known as Bonnie Glantz, for damages sustained after a tree from Ms. Glantz's property fell on the Greens' cars. We affirm.

FACTS

In early 2021, a windstorm with gusts reaching upwards of 75 miles per hour hit Spokane, causing widespread destruction. During the storm, a ponderosa pine tree located on Bonnie Glantz's residential property snapped. The top of the tree landed on and damaged two vehicles owned by Ms. Glantz's neighbors, Mary and Sherri Green. The Greens did not have adequate insurance to cover the vehicle repair costs, and Ms. Glantz did not pay for the repairs.

The Greens sued Ms. Glantz and her husband[1] in Spokane County Superior Court. They made claims of negligence and a violation of Spokane Municipal Code (SMC) 12.02.925, which outlines several "[r]esponsibilities" of "[a]butting property owners" regarding maintenance and care of trees.

Ms. Glantz moved for summary judgment. She claimed she did not breach her homeowner duties because she did not have notice of any defective trees.

In support of her motion, Ms. Glantz submitted a declaration from Timothy Schad, owner of Latah Creek Landscaping. Ms. Glantz hired Mr. Schad to perform a yard cleanup of the Green property after the windstorm. After inspecting the ponderosa pine treetop, Mr. Schad stated:

> There was no noticeable damage or disease to the tree that would have caused the top to snap off. The tree did not appear to be in poor condition.
> . . . .
> I did not notice any rot or disease to the tree parts or limbs that my crew and I cleaned up from the Green property or the trees where the parts and limbs came from. Healthy trees can blow over in heavy winds.

Clerk's Papers (CP) at 30. Ms. Glantz also submitted invoices indicating she had her trees serviced on May 25, 2009; August 7, 2014; July 26, 2019; and April 1, 2021.

_____

[1] Ms. Glantz's then-husband is referred to as "John Doe Brunt" in the complaint and subsequent pleadings. The Brunts divorced at some point after the initiation of the trial court action, and Ms. Glantz remarried. For simplicity and readability purposes, we collectively refer to claims against the Brunts as against Ms. Glantz.

The Greens responded to the summary judgment motion with a declaration from Waylan Cork, owner of Waylan's Tree & Landscaping. Mr. Cork provided the following statements:

- "I inspected the trees at [Ms. Glantz's property]." CP at 33.

- "I reviewed photographs and videos of the trees [at the property] taken around the time of the windstorm." *Id*.

- "In my professional opinion, the trees do not show signs of being trimmed for flagging. Flagging is a procedure for reducing wind resistance." *Id*. at 34.

- "In my professional opinion, the trees had several dead limbs still attached to them. Dead tree limbs increase wind resistance and are more likely to break and fall." *Id*.

- "After looking at the trees, in my professional opinion and based on my experience with trees, the trees at [the Glantz property] are more likely to snap in a windstorm than properly trimmed and maintained trees would be." *Id*.

- "In my professional experience, sometimes trees can lean if they are planted near other trees or have a reason to lean, but leaning trees should be inspected regularly because they are more likely to fall." *Id*.

Additionally, the Greens each submitted a declaration to support their positions,

where they claimed to have: (1) observed large quantities of tree limbs falling off

Ms. Glantz's trees and onto their property, (2) noticed rust colored rot on many of the

trees on Ms. Glantz's property, and (3) observed some of Ms. Glantz's trees leaned at

a steep angle.

The trial court granted Ms. Glantz's motion for summary judgment, reasoning

she did not have actual or constructive notice of any defect with the trees.

The Greens subsequently moved for reconsideration, requesting the trial court

consider testimony from Ms. Glantz's deposition which they argued contradicted her

claim she had regularly hired contractors to maintain her trees. The court denied

reconsideration, noting the deposition testimony did not constitute new evidence.

The Greens have filed a timely appeal.

## ANALYSIS

This court reviews an order granting summary judgment de novo, engaging in the

same inquiry as the trial court. *Moore v. Hagge*, 158 Wn. App. 137, 146, 241 P.3d 787

(2010). Summary judgment is appropriate when there is "no genuine issue as to any

material fact" and "the moving party is entitled to a judgment as a matter of law."

CR 56(c). "A material fact is one that affects the outcome of the litigation." *Lewis v.*

*Krussel*, 101 Wn. App. 178, 182, 2 P.3d 486 (2000). All facts and reasonable inferences

should be construed "in the light most favorable to the nonmoving party." *Moore*,

158 Wn. App. at 146-47; *Bishop v. Miche*, 137 Wn.2d 518, 523, 973 P.2d 465 (1999).

*Negligence claim*

To succeed on their negligence claim, the Greens would need to prove the

following elements: (1) Ms. Glantz had a duty to care for her trees to prevent injury to

others, (2) she breached that duty, and (3) the breach of duty caused injury to the Greens.

*See Hertog v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999). Here, the

parties' debate concerns the first element.

A landowner is not under a duty to guarantee their trees will not harm persons or

property on adjacent land when the trees are part of the natural landscape.[2] Rather, a

landowner is obliged to take corrective action toward their trees when on actual or

constructive notice of defects. *Lewis*, 101 Wn. App. at 186. A landowner is on notice

when defects in their trees are "'readily observable.'" *Id*. at 187 (quoting *Ivancic v.*

*Olmstead*, 66 N.Y.2d 349, 351, 488 N.E.2d 72 (1985)).

Ms. Glantz's motion for summary judgment was premised on the claim she lacked

---

[2] There is no dispute the trees at issue in this case were natural to the site. The duties of a landowner/possessor may differ when trees are planted by the landowner/possessor or their predecessor in interest. *See Rosengren v. City of Seattle*, 149 Wn. App. 565, 573-75, 205 P.3d 909 (2009).

actual or constructive notice of defective trees. Ms. Glantz signed a sworn declaration stating she was not aware of any defect in her trees. She produced evidence that she regularly cared for the trees. And according to the declaration from Ms. Glantz's expert, the tree that snapped and damaged the Greens' vehicles was not defective. Ms. Glantz's summary judgment materials supported her position that the Greens lacked evidence to support the first element of their negligence claim.

As recognized by the trial court, the Greens' responsive evidence failed to rebut Ms. Glantz's argument regarding lack of notice. Mr. Cork's declaration raises some criticisms of Ms. Glantz's trees. However, his declaration does not indicate the trees would have appeared defective to the untrained eye. Nor does he suggest the tree that snapped and damaged the Greens' vehicles had not been properly pruned. The declarations filed by the Greens are also unhelpful. While the Greens were concerned some of Ms. Glantz's trees showed rust colored rot and were leaning, there is no expert testimony indicating these conditions actually constituted defects. Nor is there any evidence indicating the tree that snapped suffered from these conditions. The Greens declared they often had to pick up fallen branches from Ms. Glantz's trees. However, there is no evidence the Greens ever advised Ms. Glantz of this problem.

The record fails to raise a genuine issue of material fact as to whether Ms. Glantz

had actual or constructive notice of a defect in her trees. Without such notice, she had no

duty to take corrective action. We affirm the trial court's order of summary judgment as

to negligence.

*SMC 12.02.925*

The Greens claim Ms. Glantz violated SMC 12.02.925(A)(4), which imposes

responsibilities on "[a]butting property owners" within the city of Spokane. This

provision states, in pertinent part:

> Abutting Owner Responsibilities—City Tree Maintenance List
>     A.  Abutting property owners are responsible for the following:
> . . . .
>             4.  Care and maintenance of trees on their property in such a way as
>                 to not cause a hazard to the public safety . . . .

Even assuming this provision applies to Ms. Glantz as an "[a]butting property

owner[],"[3] the Greens fail to clarify the impact of SMC 12.02.925 on their case. It is

unclear whether the Greens claim a violation of the code is evidence of negligence or

whether the code supports a private cause of action. Regardless, their reliance on the

Spokane Municipal Code fails.

---

[3] Read in context, SMC 12.02.925 may apply only to owners whose properties "[a]but[]" public rights-of-way. *See, e.g.*, SMC 12.02.925(A)(6). Ms. Glantz apparently does not disagree that SMC 12.02.925 applies to her, instead arguing that the code provision does not create a private cause of action and that she never violated it. *See* Br. of Resp'ts at 24-29.

No. 39094-2-III
*Green v. Brunt*

In their briefing, the Greens argue the municipal code supports their claim for relief because "Ms. Glantz had multiple warning signs that her trees were [in] a dangerous condition" and she "violated her obligation to make her trees safe." Appellant's Br. at 16. As set forth above, we disagree the record shows Ms. Glantz had multiple warnings. The Greens' reference to the Spokane Municipal Code therefore fails to help their case.

CONCLUSION

The summary judgment order is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Siddoway, J.P.T.[4]

---

[4] Judge Laurel H. Siddoway was a member of the Court of Appeals at the time argument was held on this matter. She is now serving as a judge pro tempore of the court pursuant to RCW 2.06.150.